# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>      Plaintiff,<br><br>vs.<br><br>Ignacio Alberto Buelna,<br><br>      Defendant. | CR 21-02310 TUC-JGZ (JR)<br><br>**REPORT AND RECOMMENDATION** |

This matter was referred to the Magistrate Judge to address the Government's Petition for Warrant to Revoke Supervised Release ("Petition"). (Doc. 71). Pursuant to Rule 32.1(b)(2) of the Federal Rules of Criminal Procedure, an evidentiary hearing was conducted on May 23, 2024. Defendant was present and represented by counsel. Two witnesses testified, United States Probation Officer Scott Martinson ("PO") and Defendant Ignacio Alberto Buelna ("Defendant") (Docs. 82, 83, 86). The Government presented Exhibits 1 and 2, which were admitted without objection. (Doc..84). The defense presented Exhibits 3, 4 and 5, which were admitted without objection. (Doc. 85).

## I.   Background

On March 4, 2022, Defendant was sentenced for the offense of Transportation of Illegal Aliens.  He was ordered to serve 13 months and one day in prison and 36 months of supervised release.  On December 15, 2023, Defendant was found to be in violation of his supervised release term and sentenced to an additional five months in prison and 24 months of supervised release.  This second term of supervision began when Defendant was released from prison on February 16, 2024, and was set to expire on February 15, 2026.

The Petition alleges a violation of Standard Condition #2 which states:  After initially reporting to the probation office, you will receive instructions from the court or the probation officer about how and when you must report to the probation officer, and you must report to the probation officer as instructed.

The Government alleges that Defendant violated this condition by failing to report as directed on two occasions, March 11, 2024, and March 15, 2024.

The Petition also alleges a violation of Standard Condition #5 which states: You must live at a place approved by the probation officer.  If you plan to change where you live or anything about your living arrangements (such as the people you live with), you must notify the probation officer at least 10 days before the change.  If notifying the probation officer in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.

The Government alleges that on March 5, 2024, during an attempted home contact, the PO was informed that Defendant was not living at his reported address. He failed to notify his PO officer of a change in residence.

**II.     Facts**

The Government's evidence supporting the violations was the testimony of Defendant's PO (Doc. 86) as well as images from the PO's SMS exchanges with Defendant from March 11. 2024, to March 15, 2024 (Exhibit 1) and the PO's post-conviction chronological record report from March 5, 2024, to March 15, 2024 (Exhibit 2).

The PO testified that for the last year, he has been assigned a specialized caseload for people with serious mental illnesses.  He began supervising Defendant when he was released from prison on February 16, 2024.  Defendant's previous Probation Officer was Aniza Davis-Richardson.  According to the PO, Officer Davis-Richardson spoke with the Defendant at his last revocation disposition hearing on December 15, 2023. It was understood that when the Defendant was released from prison, he would be living with his girlfriend at an address in Tucson, Arizona. Officer Davis-Richardson confirmed this with both the Defendant's girlfriend and defense counsel.  At the time of Defendant's release, his girlfriend's residence was the only approved address.

Defendant was ordered to report to his PO within 72 hours after his release. That release occurred on February 16, 2024.  Defendant did not report as directed. On February 29, 2024, the PO called him and sent an email but received no response.

On March 5, 2024, the PO went to the address provided by Defendant's girlfriend at the disposition hearing. The girlfriend reported that Defendant was not living at the home because he was worried that he was going to be arrested again. The PO gave the girlfriend his business card and asked that she have Defendant contact him. Later that day, Defendant did call his PO and explained that he was scared he would get in trouble and asked if he would be arrested. The PO said "no" but that they needed to get his supervision started. A meeting was scheduled for March 11, 2024, at 2 p.m. Defendant did not provide his address but said he would do so at intake.

Defendant missed the March 11 appointment with his PO. He later texted his PO apologizing for missing the meeting, explaining that things have been very difficult for him, and asking whether he could report the following day. Defendant also again asked if he would be arrested. The PO again assured him that he would not but needed to report March 12 at 1 p.m. Defendant stated that he was fearful and wanted to meet at a neutral location. He asked if the appointment could take place at Culver's, a local restaurant. The PO initially agreed but after discussing it with his supervisor, decided it was not a prudent idea. The PO cancelled the appointment at the last minute and changed the location and date of the appointment. Ultimately, it was agreed that the appointment would occur at the PO's office on March 15 at 2:00 p.m. Defendant missed this appointment as well.

On March 20, 2024, the PO requested an arrest warrant. The present Petition was filed on March 21, 2024.

1       Defendant also testified at the hearing.  With respect to his failure to provide a
2  change of residence, Defendant doesn't recall speaking to his first probation officer
3  and confirming that he would be living with his girlfriend.  He testified that he was
4  planning to meet with his new probation officer to get approval for a place to live.

5       With respect to his failure to report, Defendant detailed a troubling decline in
6  his mental health, that in combination with his illegal drug use and lack of mental
7  health medications, very likely affected his ability to comply with his supervised
8  release reporting requirements.

9       Defendant testified that he takes a series of medication for his mental health
10 disorder.  When he was released from prison, he only had about 10 days' worth and
11 then he ran out.  He was in the process of trying to set up an appointment at El Rio to
12 get back on his medications.

13      When asked about the days leading up to his detention on March 15, 2024,
14 Defendant doesn't recall details or even know what happened.  He only remembers
15 that he was walking to meet his PO at Culver's when he got the text cancelling the
16 appointment.  He recalls going down a ramp while trying to shortcut the highway
17 when the police detained him and took him to Banner hospital.

18      Defense Exhibits 3, 4 and 5 corroborate Defendant's account of his mental
19 health decline. Exhibit 3 is a letter from Banner UMC South Campus stating that
20 Defendant was hospitalized from March 15 to March 19, 2024.  Exhibits 4 and 5
21 detail the reason for the hospitalization.  Exhibit 4 is an Application for Emergency
22 Admission for Evaluation that was prepared by a police officer and indicates that on

5

March 15, 2024, Defendant called 911 to report that he wanted to jump in front of a vehicle. He was seen walking on the roadway for approximately 2 miles prior to walking onto I-10 west bound where he blocked all west bound traffic. Officers took him into custody while he kicked and screamed that someone was trying to kill him. He kept telling officers not to kill him or cut off his head, arms or legs. He appeared very manic and paranoid. Defendant admitted that he had schizophrenia and had used methamphetamine two days prior and had also used fentanyl. Based on the behavior described by police, medical personnel filed a Petition for Court-Ordered Evaluation, Exhibit 5, where doctors opined that the Defendant's judgement and insight were impaired to the point that he could not make an informed decision to undergo voluntary evaluation. An Order for Evaluation was entered on March 18, 2024.

### III.    Legal Standard

According to 18 U.S.C. §3583 (e)(3), a court may revoke a defendant's term of supervised release if it finds by a "preponderance of the evidence" that the defendant violated a condition of his supervised release. Although this is a lower standard than the "beyond a reasonable doubt" standard required for a criminal conviction, there must still be credible evidence that the defendant actually violated the terms of release. *United States v. Perez*, 526 F.3d 543, 550 (9th Cir. 2008). A defendant is entitled to "a fair and meaningful opportunity to impeach the evidence" offered to establish an alleged violation to assure that any finding of a violation is based on

verified facts and reliable information. *United States v. Martin*, 984 F.2d 308, 310 (9th Cir. 1993).

It is the government's burden to demonstrate that a defendant has violated a condition of supervised release. *United States v. Weber*, 451 F.3d 552, 559 (9th Cir. 2006). In reviewing a challenge to the sufficiency of evidence for a supervised release revocation, the Ninth Circuit considers "whether viewing the evidence in the light most favorable to the government, any rational trier of fact could have found the essential elements of a violation by a preponderance of the evidence." *United States v. Richards*, 52 F.4th 879, 888 (9th Cir. 2022) (quoting *United States v. King*, 608 F.3d 1122, 1129 (9th Cir. 2010)).

**IV.    Analysis**

Considering the testimony at the evidentiary hearing, revocation is warranted for failure to live at a location approved by his Probation Officer.  At the revocation disposition hearing on December 15, 2023, Defendant's first Probation Officer confirmed with all parties that Defendant would be living at his girlfriend's home. Presumably, when Defendant was released at his disposition hearing on February 16, 2024, he was properly medicated and by his own admission had 10 days' worth of medication which would mean he was medically stable up to February 26.  At no time during those 10 days did he call his PO to change his living arrangements.

Assuming he was taking his medication but ran out on February 26, it is understandable that his mental health quickly declined.  Add to that, using methamphetamine and fentanyl, it is no wonder Defendant completely disregarded

7

his PO's directions and ended up in a crisis center after putting himself and the public in grave danger. While these aggravating circumstances underscore the need for revocation and continued supervision, revocation cannot be based on Defendant's failure to report to his PO as directed. He simply did not have the requisite intent to violate in this fashion.

Having considered the testimony, exhibits and arguments of counsel, the Magistrate Judge finds that the Government has proven by a preponderance of the evidence that Defendant violated Mandatory Condition #5 by failing to report a change of address. The Court further finds that because of his mental state and hospitalization, the Government has not proven by a preponderance of the evidence that Defendant violated Mandatory Condition #2 by failing to report as instructed.

## V. Recommendation

Based on the foregoing and pursuant to 28 U.S.C. § 636(b) and LRCrim 57.6(d)(4), Rules of Practice for the District of Arizona, the undersigned Magistrate Judge RECOMMENDS that the District Court, after an independent review of the record, find that Defendant violated Mandatory Condition #5 but did not violate Standard Condition #2. **The Magistrate Judge RECOMMENDS that Defendant's term of supervised release be revoked and that the District Court schedule a disposition hearing.**

Pursuant to 28 U.S.C. § 636(b) and Rule 59(b)(2) of the Federal Rules of Criminal Procedure, any party may serve and file written objections with the District Court within fourteen (14) days of being served with a copy of this Report and

Recommendation. If the objections are not timely filed, they may be deemed waived. If any objections are filed, this action should be designated with the following case number CR 21-02310 TUC-JGZ. Failure to file timely objections to any factual or legal determination of the Magistrate Judge in accordance with Fed. R. Crim. P. 59 may result in waiver of the right of review.

Dated this 31st day of May, 2024.

_____
Honorable Jacqueline M. Rateau
United States Magistrate Judge